# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**JASON SALTZ**
2351 Eisenhower Ave Apt 1411
Alexandria VA 22314-5368

              Plaintiff

**v.**

**CITY OF FREDERICK, MARYLAND**
Serve: Michael O'Connor, Mayor
       101 North Court St
       Frederick MD 21701-5415

**EDWARD HARGIS**
2243 W Greenleaf Dr
Frederick MD 21702-2625

**PATRICK GROSSMAN**
100 W Patrick St
Frederick MD 21701-5513

**DWIGHT SOMMERS**
100 W Patrick St
Frederick MD 21701-5513

**JOHN S. CORBETT**
100 W Patrick St
Frederick MD 21701-5513

**TRACEY WILES**
100 W Patrick St
Frederick MD 21701-5513

           Defendants

Civil Action No.:

---

## COMPLAINT
– § 1983 Claims for Damages and for Declaratory and Injunctive Relief –
– With Jury Demand –

---

Jason Saltz, Plaintiff, by and through counsel, Sean R. Day, respectfully files this complaint and states:

## Jurisdiction and Venue

1.      This complaint contains claims under 42 U.S.C. § 1983 pertaining to the Plaintiff's First Amendment rights, applicable to the Defendants through the Fourteenth Amendment. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

2.      All events herein occurred within the City of Frederick, Maryland.

## Parties

3.      Plaintiff **Jason Saltz** is a natural person and citizen of the Commonwealth of Virginia and the United States of America.

4.      Defendant **City of Frederick, Maryland**, is a local municipal corporation located in the State of Maryland and is a "person" under 42 U.S.C. § 1983.

5.      During all events described herein, Defendant **Edward Hargis** was the police chief of the City of Frederick Police Department acting within the scope of that employment and under the color of state and municipal

law, and in reference to the policies herein was a policymaker for the City of Frederick. He is sued in his individual capacity.

6.      During all events described herein, the following persons were officers with the City of Frederick Police Department acting within the scope of that employment and under the color of state and municipal law, and are sued in their individual capacities (indicating position during incidents herein): **Patrick Grossman** (captain); **Dwight Sommers** (captain); **John S. Corbett** (lieutenant); and **Tracey Wiles** (sergeant).

### Activities

7.      This litigation relates to activities on November 2 and 9, 2019, and to planned activities in November and December 2020.

8.      In November and December of each year a third party operates horse-drawn carriage rides in the City of Frederick, picking up and dropping off riders standing in line; for the activities relevant herein, pick-up and drop-off were on the block of 300-320 East Church Street, Frederick, Maryland.

9.      Saltz is an animal rights advocate and activist who desired and desires to protest and leaflet against the use of horses to pull carriages.

10.    The activities herein occurred in a commercial area at times when there is substantial ambient noise.

11.    At each event no more than twenty animal rights protesters appeared for protests against the horse drawn carriages.

12.    Protesters, including Saltz, desired to stand on the opposite side of the street on a public sidewalk and space, hold signs protesting the horse drawn carriages, and at times chant.

13.    Additionally, at times one or two persons, including Saltz, desired to offer leaflets at arm's reach and engage in civil discussion at a conversational distance with persons waiting to ride the carriages (**potential riders**), to peacefully and politely try to persuade them not to ride in horse drawn carriages or to consider not doing so again. This cannot be done effectively from a distance such as from across the street.

14.    Saltz along with others has participated in the protest events in 2018 and 2019 and intends to do so again in 2020. Other persons without Saltz protested in 2017.

### Police Policies and Customs

15.    The City of Frederick, through Hargis, implemented policies

regarding protesters and leafletters.

16.    Additionally, all police officers at the scene (typically from four to twelve police officers each event) engaged in coordinated, uniform, and widespread actions that created a custom regarding protesters and leafletters.

17.    In 2019 the City of Frederick and its police officers set up a "Free Speech Zone" at the southeast corner of North East Street and East Church Street, out of view of potential riders. Protesters in the "free speech zone" would only be in view of riders after they had already taken a ride on the carriage.

18.    Protesters, including Saltz on November 2 and 9, 2019, were allowed to stand across the street from potential riders (outside the "free speech zone") but with the following conditions:

a.    They had to stand at the far end of the sidewalk (from the street) without letting their feet touch the abutting grass (even though also part of public space); having feet touch the grass caused them to be subjected to harassment and threats by police officers. (In 2018 there was no so-called "free speech zone"; protesters were told to stand on the grassy area across the street and not on the

sidewalk (opposite of 2019). Yellow police tape was stretched along the sidewalk to separate the grassy area and sidewalk.)

**b.**     They could not chant; more specifically, they could not chant a viewpoint opposing the horse drawn carriages.

19.     Protesters were not allowed to chant because (a) their viewpoints were purportedly opposed to the viewpoints of potential riders and (b) in that light, chanting was pre-emptively equated with disturbing the peace even without a citizen-initiated complaint and without an independent and objective determination that the noise was unreasonably loud under the circumstances.

20.     There had not been a citizen-initiated complaint about the noise level of chanting, and chanting would not have been unreasonably loud under the circumstances.

21.     Leafletters, including Saltz on November 9, 2019, were not allowed to approach potential riders to offer leaflets at arm's reach and engage in civil discussions at conversational distance.

22.     All police officers at the scene allowed others to disrupt protest activities, including but not limited to:

**a.**     Two large men working with the horse drawn carriage owner

would walk up and down the sidewalk where the protesters were,

back and forth, to harass protesters and to attempt to create the

appearance that protesters were blocking the sidewalk.

    **b.**    One person played loud music with a "boom box" set up

behind protesters.

23.    There was no justification for the policies herein. Furthermore,

Hargis and the City of Frederick did not consider, much less attempt, less

intrusive means that were available to address any perceived concerns.

### Additional Specifics Regarding Defendant Officers

24.    On November 2, 2019, Corbett, at the direction of Hargis, Grossman,

and Sommers, prohibited protesters, including Saltz, from chanting across

the street from potential riders, for the stated reason that their viewpoints

were opposed to horse drawn carriages and as a result the chanting would

disturb the peace. There had not been a citizen-initiated complaint about

the noise level, and the noise level would not have been unreasonably

loud under the circumstances.

25.    On November 9, 2019, Wiles, at the direction of Hargis, Grossman,

and Sommers, prohibited protesters, including Saltz, from chanting across

the street from potential riders, for the stated reason that their viewpoints were opposed to horse drawn carriages and as a result the chanting would disturb the peace. There had not been a citizen-initiated complaint about the noise level, and the noise level would not have been unreasonably loud under the circumstances. (Wiles stated that the operator of the horse drawn carriages was feeling harassed; this was due to the viewpoint of the protests.)

26.     On November 9, 2019, Wiles initially advised protesters, including Saltz, that they could chant, but then returned to state that at the direction of her captain that chanting was not allowed. On this day a boom box was permitted to play loud music behind the protesters, intended to annoy and disrupt the protesters.

27.     Also on November 9, 2019, Wiles, at the direction of Hargis, Grossman, and Sommers, prohibited Saltz from approaching potential riders to offer a leaflet at arm's reach and to speak with them at a conversational distance. Wiles stated that the reason was that the potential riders had viewpoints opposed to Saltz's.

28.     Wiles initially told Saltz he could approach to speak with and offer leaflets to potential riders. Wiles misunderstood the request and believed

Saltz intended to approach persons who were not potential riders and who therefore did not, in her mind, have the opposite viewpoint. When Wiles realized that Saltz intended to speak with and offer leaflets to potential riders, she blocked him and informed him he could not offer leaflets to or speak with people with opposing viewpoints.

## Impact

29.    Protesters and leafletters were threatened with arrest if they did not follow the policies and customs set forth above.

30.    On November 2 and 9, 2019, Saltz wanted to chant across the street from potential riders but did not do so due to the policies, customs, and actions set forth herein.

31.    On November 9, 2019, Saltz wanted to approach potential riders at arm's reach and conversational distance to offer leaflets and have civil discussions in a conversational voice, but did not do so due to the policies, customs, and actions set forth herein.

## Count 1 — § 1983 Claim for Damages Against Municipality for 11/2/19

32.    Paragraphs preceding Count 1 are incorporated herein by reference

as if fully set forth herein.

33.　This count is filed against the City of Frederick pursuant to 42 U.S.C. § 1983 for its unconstitutional policies and customs.

34.　On November 2, 2019, the City of Frederick's policies and customs against chanting from across the street caused deprivation of Mr. Saltz's First Amendment rights.

35.　On November 2, 2019, the City of Frederick's policies and customs against chanting from across the street with opposing viewpoints caused deprivation of Mr. Saltz's First Amendment rights.

36.　As a direct and proximate result of these violations, Mr. Saltz suffered a deprivation of constitutional rights.

## Count 2 — § 1983 Claim for Damages Against Individuals for 11/2/19

37.　Paragraphs preceding Count 1 are incorporated herein by reference as if fully set forth herein.

38.　This count is filed pursuant to 42 U.S.C. § 1983 against Defendants Edward Hargis (chief), Patrick Grossman (captain), Dwight Sommers (captain), and John S. Corbett in their individual capacities.

39.　On November 2, 2019, Corbett prohibited Saltz from chanting across

the street from potential riders.

40.     On November 2, 2019, Corbett prohibited Saltz from chanting opposing viewpoints across the street from potential riders.

41.     Corbett's actions were at the express direction and authorization of his superiors Hargis, Grossman, and Sommers. In the alternative, if they did not expressly direct or authorize the actions, Hargis, Grossman, and Sommers knew that Corbett and other officers were taking the actions and the response or lack thereof permitted the actions to happen and to cause the constitutional deprivations herein.

42.     As a direct and proximate result of these violations, Mr. Saltz suffered a deprivation of constitutional rights.

### Count 3 — § 1983 Claim for Damages Against Municipality for 11/9/19

43.     Paragraphs preceding Count 1 are incorporated herein by reference as if fully set forth herein.

44.     This count is filed against the City of Frederick pursuant to 42 U.S.C. § 1983 for its unconstitutional policies and customs.

45.     On November 9, 2019, the City of Frederick's policies and customs against chanting from across the street caused deprivation of Mr. Saltz's

First Amendment rights.

46.     On November 9, 2019, the City of Frederick's policies and customs against chanting from across the street with opposing viewpoints caused deprivation of Mr. Saltz's First Amendment rights.

47.     On November 9, 2019, the City of Frederick's policies and customs against leafletting potential riders caused deprivation of Mr. Saltz's First Amendment rights.

48.     On November 9, 2019, the City of Frederick's policies and customs against leafletting potential riders due to viewpoint caused deprivation of Mr. Saltz's First Amendment rights.

49.     As a direct and proximate result of these violations, Mr. Saltz suffered a deprivation of constitutional rights.

**Count 4 — § 1983 Claim for Damages Against Individuals for 11/9/19**

50.     Paragraphs preceding Count 1 are incorporated herein by reference as if fully set forth herein.

51.     This count is filed pursuant to 42 U.S.C. § 1983 against Defendants Edward Hargis (chief), Patrick Grossman (captain), Dwight Sommers (captain), and Tracey Wiles in their individual capacities.

52.     On November 9, 2019, Wiles prohibited Saltz from chanting across the street from potential riders.

53.     On November 9, 2019, Wiles prohibited Saltz from leafletting potential riders (approaching within arm's length and conversation distance to offer a leaflet and engage in peaceful discourse).

54.     On November 9, 2019, Wiles prohibited Saltz from leafletting potential riders due to viewpoint.

55.     Wiles's actions were at the express direction and authorization of her superiors Hargis, Grossman, and Sommers. In the alternative, if they did not expressly direct or authorize the actions, Hargis, Grossman, and Sommers knew that Wiles and other officers were taking the actions and the response or lack thereof permitted the actions to happen and cause the constitutional deprivations herein.

56.     As a direct and proximate result of these violations, Mr. Saltz suffered a deprivation of constitutional rights.

### Count 5 — Declaratory and Injunctive Relief

57.     Paragraphs preceding Count 1 are incorporated herein by reference as if fully set forth herein.

**58.**     The City of Frederick has policies and customs and its officers took

actions in violation of the First Amendment rights of persons, including

Saltz, who wished to protest against and leaflet at the annual November

and December horse drawn carriage activities.

**59.**     These policies, customs, and violations include:

> **a.**     Not allowing protesters to chant across the street from
>
> potential riders.
>
> **b.**     Not allowing protesters to chant across the street from
>
> potential riders due to perceived opposing viewpoints.
>
> **c.**     Not allowing leafletting of potential riders (approaching
>
> within arm's length and conversation distance to offer a leaflet and
>
> engage in peaceful discourse).
>
> **d.**     Not allowing leafletting of potential riders due to viewpoint.

**60.**     Upon information and belief, there will continue to be horse drawn

carriage rides in the City of Frederick in November and December 2020.

**61.**     On November 2 and 9, 2019, Saltz was prohibited from chanting

across the street from potential riders and on November 9, 2019, was

prohibited from leafletting potential riders.

**62.**     On November 2, 2019, the City of Frederick, Edward Hargis, Patrick

Grossman, Dwight Sommers, and John S. Corbett violated Jason Saltz's

First Amendment rights.

63.     On November 9, 2019 City of Frederick, Edward Hargis, Patrick

Grossman, Dwight Sommers, and Tracey Wiles violated Jason Saltz's First

Amendment rights.

64.     There is an actual controversy between the parties.

65.     It would be in the public interest for there to be declaratory relief to

resolve these issues and protect the First Amendment rights of citizens.

66.     In November and December 2020, Saltz desires to chant across the

street from potential riders and to leaflet potential riders.

67.     Without injunctive relief, Mr. Saltz risks further violation of his

fundamental constitutional rights in November and December 2020.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Jason Saltz requests judgment as follows for each violation.

1.      A.      Compensatory damages in an amount to be determined by a jury;

           B.      punitive damages as determined by a jury;

           C.      attorney's fees;

           D.      costs; and

           E.      post-judgment interest

against Defendants City of Frederick, Edward Hargis, Patrick Grossman, Dwight Sommers, John S. Corbett, and Tracey Wiles, jointly and severally, and such other and further relief as may be appropriate.

**AND**

2.      Declaratory judgment that Jason Saltz's First Amendment rights were violated on November 2 and 9, 2019, and preliminary and final injunctive relief against the City of Frederick, Maryland, barring the actions complained of herein and implementing corrective actions. Plus an award of attorney's fees and costs, and such other and further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Respectfully submitted,

/s/Sean R. Day /s/
Sean R. Day (Bar No. 12831)
7474 Greenway Center Dr Ste 150
Greenbelt MD 20770-3524
301.220.2270 phone
301.220.2441 fax
*sean@dayincourt.net*
Attorney for Plaintiff